Matter of Kalish

2026 NY Slip Op 02653

April 29, 2026

Appellate Division, Second Department

Per Curiam

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Adam Kalish, an attorney and counsel-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Adam Kalish, respondent. (Attorney Registration No. 4775110)

Supreme Court of the State of New York, Appellate Division, Second Judicial Department

Decided on April 29, 2026

2022-10374

Hector D. Lasalle, P.J.

Mark C. Dillon

Colleen D. Duffy

Francesca E. Connolly

William G. Ford, JJ.

Catherine A. Sheridan, Hauppauge, NY, for petitioner.

Richard E. Mischel, P.C., New York, NY, for respondent.

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on March 3, 2010.

Per Curiam.

[*1]

Per Curiam.

OPINION & ORDER

The Grievance Committee for the Tenth Judicial District commenced a formal disciplinary proceeding pursuant to 22 NYCRR 1240.8 against the respondent by serving and filing a notice of petition and a verified petition, both dated December 16, 2022. The respondent filed a verified answer dated February 1, 2023. The Grievance Committee served and filed a statement of disputed and undisputed facts dated February 10, 2023, to which the respondent provided a response dated March 3, 2023. By decision and order on application dated April 25, 2023, this Court, pursuant to 22 NYCRR 1240.8(b)(1), referred the matter to David I. Ferber, as Special Referee, to hear and report. In a report dated May 7, 2024, the Special Referee sustained all three charges in the petition. By notice of motion dated May 29, 2024, the Grievance Committee moves to confirm the Special Referee's report and to impose such discipline upon the respondent as this Court deems just and proper. The respondent cross-moves to confirm the Special Referee's report insofar as it sustained charge one, and to disaffirm the Special Referee's report insofar as it sustained charges two and three. The respondent requests the imposition of a sanction no greater than a public censure. We find that the Special Referee properly sustained charges one and three, but should not have sustained charge two.

The Petition

The petition alleges three charges of misconduct related to the respondent's escrow account. At all relevant times, the respondent maintained an account at Citibank entitled "Kalish PC Attorney Trust Account" with an account number ending in 4118 (hereinafter escrow account).

On April 13, 2020, the respondent's escrow account had a balance of $572,158.34, consisting of fiduciary funds for 32 client matters. The client funds were deposited in the escrow account between 2013 and 2020. Between April 13, 2020, and May 1, 2020, no funds were remitted by the respondent from the escrow account in connection with any of the 32 client matters. On May 1, 2020, the balance in the escrow account was only $148,423.57, a deficiency of $423,734.77.

Charge one alleges that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0). Charge three alleges, inter alia, that based on the above, the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct.

The Hearing Record

A hearing was held on February 28, 2024. The Grievance Committee entered 17 exhibits into evidence to prove its case in chief. The respondent submitted 16 exhibits, testified on his own behalf, and called three character witnesses: Jaime Lathrop, Sunjay Mathews, and the Honorable Frank Seddio, two of whom also provided character letters.

The respondent admitted at the hearing to all of the factual allegations in the petition but does not admit that the conduct described constituted a violation of the Rules of Professional Conduct.

The respondent testified that he was introduced to Sam Sprei in 2012 or 2013 and Sprei used to refer clients to the respondent. In April 2020, Sprei referred Ira Russack, the owner of 1 Centennial Plaza, LLC (hereinafter Centennial), to the respondent. Centennial owned property in New Jersey, which Russack wanted to refinance and transfer the property into a new LLC. The respondent and Russack entered into a retainer agreement dated April 14, 2020, which retained the respondent "to represent the Client [Shambhala Realty, LLC, 1 Centennial Plaza, LLC, Centennial Plaza Prop, LLC,] in the creation of corporate documents, review lenders documents and act as the escrow agents for the members of the LLC as well as the sale proceeds." The retainer agreement also directed that "Sam Sprei shall act as [Russack's] agent for decisions with regards to the above referenced LLC and [the respondent] relies on this statement." The respondent explained that he "was simply the investor's vehicle or the investor's attorney or the attorney for Centennial to respond to the investor's request."

The respondent testified that it was his understanding that Centennial was taking on investors and lenders in order to transfer the New Jersey property to a new entity, Centennial Plaza Prop, LLC, and that the investors would be paid back at the closing on the property. During his examination under oath (hereinafter EUO), the respondent stated that it was "a blurred line as to whether they were investors or lenders." The respondent purportedly would account for the money and distribute funds pursuant to Sprei's instructions. When asked during his EUO if he thought it was odd that Russack was retaining the respondent essentially just for the use of his escrow account, the respondent admitted that he "didn't think about it at the time. [Russack] was referred to [him] by somebody that [the respondent] knew."

According to the respondent, he told Russack and Sprei that he needed the funds wired into his escrow account because he was not going into the office due to the COVID-19 pandemic. The respondent provided wire instructions to Sprei to provide to the investors/lenders. The respondent did not know the names of the investors/lenders and did not know the source of the funds being wired into his escrow account. The respondent also did not know the names of the individuals to whom he was wiring money. The respondent admitted that he would receive a telephone call from Sprei informing him that a deposit had been made into his escrow account, and he initiated wires to various entities or individuals per the instructions he received from Sprei.

The respondent testified during his EUO that prior to July 2, 2020, the Citibank online platform was "very basic" and it did not allow the user to see if a deposit was still pending or if it had cleared. The respondent testified that he would just see a balance number, assume the funds were available, and then wire money from his escrow account per Sprei's instructions. The respondent testified that he "should have done extra work to make sure that [the deposits were] either cleared or pending, but in [his] mind when [he] saw CitiBusiness, it was what's available."

Several days after he was retained by Russack, the respondent issued a check for $400,000 from his escrow account to Sprei, which was dishonored on or about April 29, 2020. Approximately one week later, on or about May 7, 2020, the respondent went into his office to check his mail and found approximately 10 letters from Citibank informing him that several deposited checks were dishonored. According to the respondent, it was at this point that he realized that there was an issue and that he had been wiring funds to parties related to Centennial using other client's funds. The respondent then called Sprei, who assured the respondent that Sprei would "fix it," but that he needed time.

The respondent testified that he believed he had two options at the time: he could either "play nice" to ensure that he received the funds from Sprei and protect the respondent's other clients' money that had been lost or he could go to the authorities and worry about being reimbursed later. According to the respondent, he chose the former option because he knew Sprei and Russack had assets and money coming in so he wanted to work with them to get the money back. The respondent also mentioned that Sprei was someone who had been referred to the respondent by his mentor, a trusted source, and the respondent believed Sprei had a good relationship with the legal community so the respondent did not want to blame Sprei and Russack.

The respondent testified that he was the sole signatory on the escrow account and that he closed the escrow account in the winter of 2022 due to this disciplinary matter.

In mitigation, the respondent testified that no client made a complaint against him, but also that he did not notify his clients that funds were missing. The respondent also testified that everyone was made whole. During the time of the misconduct, the respondent's wife was experiencing a high-risk pregnancy. It was also the start of the COVID-19 pandemic, and therefore, the respondent was distracted. The respondent testified that he apologized, that he should have been more diligent, and that he put his trust in Sprei whom he has known for more than eight years. The respondent testified as to his community involvement, including his service on the board of directors of the Brooklyn Bar Association, as the president of the Bay Ridge Lawyers Association, and on the board of directors for a nonprofit called the Vincent Carbonaro Foundation, which raises funds for youth athletics in Brooklyn. The respondent also testified that he is active in fundraising for Alzheimer's disease and Lewy body dementia. The respondent also served on the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts during the time period of the misconduct.

The Special Referee's Report

The Special Referee sustained all three charges in the petition. The Special Referee noted that the respondent served on the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts during the time of this misconduct, which "should have made him acutely aware of the ethical considerations involved in maintaining an escrow account." The Special Referee found that the respondent's conduct as a whole, including:

"(i) relying solely upon his bank's simple on-line program to manage his escrow account, (ii) not visiting his office (and seeing his mail) for an extended period in the course of the subject transactions, (iii) not learning the source, destination or even amounts of funds passing through his escrow account, (iv) not taking immediate remedial action and, in particular, not reporting to the criminal authorities, once he was apprised of what had occurred, (v) relying on the word of a person who had referred legal matters to him so as to extend the period of time during which his escrow account was below the amount required to be held for the benefit of other clients, amounts to extreme carelessness and serves to aggravate the charges brought against him."

In mitigation, the Special Referee noted that the testimony of the respondent's character witnesses and character letters referenced his good character and reputation, and highlighted his volunteer activities and engagement in various bar associations.

The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as this Court deems just and proper. The Grievance Committee states that while the respondent has no prior disciplinary history, the respondent was a member of the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts at the time the misconduct occurred. Therefore, the Grievance Committee asserts that the respondent should have been well aware that escrow accounts are among the most important fiduciary obligations of an attorney. The Grievance Committee argues that, instead, the respondent appeared more concerned with maintaining a relationship with Sprei as opposed to upholding his fiduciary obligations. The Grievance Committee asserts that this should be considered as an aggravating factor for this Court's consideration in imposing discipline.

The respondent cross-moves to confirm the Special Referee's report insofar as it sustained charge one, and to disaffirm the Special Referee's report insofar as it sustained charges two and three. The respondent requests that this Court consider his remorse, unintentional and non-venal misconduct, lack of client or third-party harm, lack of a disciplinary record, remedial measures [*2]implemented, and evidence of the respondent's good character, reputation, and contributions to the legal community. The respondent requests the imposition of a sanction no greater than a public censure.

Findings and Conclusion

In view of the evidence adduced at the hearing and the admissions, we find that the Special Referee properly sustained charges one and three of the petition. Further, we find that charge two should not have been sustained. Notwithstanding the mitigation advanced, we find that the respondent's actions were a clear abdication of his responsibilities and his fiduciary duties to his clients. Further, and in aggravation, the respondent knew or should have known that the conduct herein was prohibited by the Rules of Professional Conduct, as highlighted by his service on the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts at the time of the misconduct, yet he acted in contravention of the Rules nonetheless.

Under the totality of the circumstances, we find that the respondent's conduct warrants a suspension from the practice of law for a period of three years.

LASALLE, P.J., DILLON, DUFFY, CONNOLLY and FORD, JJ., concur.

ORDERED that the branch of the Grievance Committee's motion which is to confirm the Special Referee's report insofar as it sustained charges one and three is granted, and that branch of the Grievance Committee's motion which is to confirm the Special Referee's report insofar as it sustained charge two is denied; and it is further,

ORDERED that the branch of the respondent's cross-motion which is to confirm the Special Referee's report insofar as it sustained charge one is granted, that branch of the respondent's cross-motion which is to disaffirm the Special Referee's report insofar as it sustained charge two is granted, and that branch of the respondent's cross-motion which is to disaffirm the Special Referee's report insofar as it sustained charge three is denied; and it is further,

ORDERED that the respondent, Adam Kalish, is suspended from the practice of law for a period of three years, commencing May 29, 2026, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than November 29, 2028. In such application (see 22 NYCRR 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension, he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,

ORDERED that the respondent, Adam Kalish, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15); and it is further,

ORDERED that pursuant to Judiciary Law § 90, the respondent, Adam Kalish, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

ORDERED that if the respondent, Adam Kalish, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).

ENTER:

Darrell M. Joseph

Clerk of the Court